# Third District Court of Appeal

## State of Florida

Opinion filed September 17, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-21
Lower Tribunal No. 12-6752
_____

**David Ledo,**

Appellant,

vs.

**Seavie Resources, LLC,**

Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Darrin P. Gayles, Judge.

T.P. Murphy's Law P.A., and Thomas P. Murphy, for appellant.

De La Cruz & Cutler, LLC, and H. Jeffrey Cutler; Albert D. Viener, for appellee.

Before WELLS, EMAS and SCALES, JJ.

WELLS, Judge.

This is a straight forward mortgage foreclosure action to which defendant below, Appellant here, David Ledo, asserted no valid defenses, and, after his attorney withdrew because of irreconcilable differences, continued to represent himself. Ledo appeals from a resulting Final Judgment of Foreclosure entered by the trial court after the entry of an earlier order striking Ledo's pleadings. Upon failure to respond to interrogatories, and following an order to show cause why his pleadings should not be stricken for failure to comply with discovery demands, Ledo's pleadings were stricken by the trial court. Because the record is devoid of any excuse or hint of explanation for Ledo's failure to comply with an express court order to respond to discovery, we affirm.

## I.      Facts

This action to collect on a $165,000 promissory note and to foreclose the mortgage securing it was filed by Seavie Resources, LLC on February 22, 2012. After Ledo's attorney, Joshua Bliel of The Ticktin Law Group, P.A., requested an enlargement of time to respond, an answer generally denying the allegations of the sworn complaint and a single affirmative defense were asserted. In sum, the defense stated:

> The Defendant raises as his First Affirmative Defense the defense of Unclean Hands, as the Defendant has made several attempts to repay the amounts alleged to be due pursuant to the negotiations between the Plaintiff and Defendant, but the agents of the Plaintiff have failed to abide by those negotiations.

2

This answer and defense were filed on June 5, 2012, and, that same day, Seavie propounded its first set of interrogatories on Ledo. No answers or responses to these interrogatories were served within the thirty-day time limit as required by the relevant rule. See Fla. R. Civ. P. 1.340(a). Rather, an agreed order was entered granting Ledo until August 22, 2012, in which to respond.

On September 5, 2012, two weeks after answers to Seavie's interrogatories were due, Seavie moved to compel and for sanctions for Ledo's failure to timely respond. That same day, Ledo's counsel moved to withdraw citing to "irreconcilable differences." On September 13, the motion to withdraw was granted, and Ledo was ordered to either retain new counsel within thirty days or advise the court whether he was going to represent himself. That same order clearly advised Ledo that his failure to either retain new counsel or advise the court that he would continue to represent himself could result in imposition of sanctions, including striking of his pleadings:

> **THIS CAUSE**, having come before this Court on September 13, 2012 on Motion to Withdraw as Counsel for **Defendant David Ledo** [hereinafter "CLIENT"], and appropriate notice having been given, it is hereby,
>
> **ORDERED AND ADJUDGED** as follows:
>
> 1) The Motion to Withdraw is **GRANTED**.
>
> 2) Movant shall mail a copy of this order to Client forthwith.
>
> 3) **Within 30 days** from the date of this order, Client shall either:

3

>      a. Retain new counsel and have that counsel file a written appearance with the clerk; OR
>
>      b. File a written notice with the clerk advising that Client will represent himself/herself. . . .
>
> 4) Failure to comply with the preceding paragraph, will create a presumption that Client no longer wishes to participate in this lawsuit and the Court may *sua sponte* or on motion of opposing party **impose sanctions against Client**. **Sanctions may include the** imposition of fees and costs, **striking of pleadings**, entry of default, and dismissal with prejudice.
>
> 5) In the interim, Client is required to comply with orders/notices requiring Client's appearance in court; pending orders requiring compliance are stayed for thirty days . . . .

(Emphasis added in paragraphs three and four). Ledo neither secured new counsel within thirty days nor notified the court below that he intended to self-represent.

On November 7, 2102, Seavie's motion for sanctions against Ledo for his failure to respond to its interrogatories was heard. Although the motion was granted, Ledo's pleadings were not stricken for failure to respond to Seavie's interrogatories. To the contrary, a small monetary sanction was imposed and Ledo was accorded yet another opportunity to respond to Seavie's discovery request:

> **THIS CAUSE** having come on to be heard on November 7, 2012, on Plaintiff's . . . Motion To compel Defendant, David Ledo's, Answers to Plaintiff's Initial Set of Interrogatories, for Sanctions, etc. and the Court having heard arguments of counsel, and being otherwise advised in the premises, it is hereupon
>
> **ORDERED AND ADJUDGED** that said Motion be, and the same is hereby 1) Granted. The defendant, David Ledo, **shall** provide

full and complete answers to Plaintiff's interrogatories within 10 days from the date of this order. 2) Sanctions are granted for defendant's failure to comply with the prior agreed order in the amount of $500 to be paid to plaintiff within 10 days. (3) **Failure to comply with 1 or 2 above will result in defendant's pleadings being stricken**.

(Emphasis added).

When Ledo failed yet again to provide discovery as expressly ordered, Seavie moved for imposition of the sanctions delineated in the November 7 order (to wit, the striking of Ledo's pleadings). On December 12, 2012, that motion was granted, and Ledo's pleadings were stricken and judgment on liability was entered. Ledo filed no motion for reconsideration of the December 12 order striking his pleadings.

On January 22, 2013, Seavie moved for summary judgment to foreclose the mortgage securing Ledo's defaulted loan. The motion was set for hearing on February 26, 2013. However, the day before the scheduled summary judgment hearing, Ledo, still acting *pro se*, filed for Chapter 7 bankruptcy protection and filed a suggestion of bankruptcy with the circuit court in the foreclosure action. As a consequence, the summary judgment hearing was stayed.

On April 25, 2013, after the bankruptcy action was dismissed, the motion for summary judgment was reset for June 3, 2013. With a hearing on Seavie's motion for summary judgment looming, on May 16, 2013, the scheduled June 3 hearing was continued to allow Ledo to notice the appearance of new counsel and to allow

that attorney to file any "motions" that might be appropriate. Ledo's new lawyer filed no motions, but instead filed a counterclaim which purported to state claims sounding in fraud and usury.[1]

Seavie moved to strike this pleading because Ledo's pleadings had already been stricken and liability determined against him by virtue of the trial court's December 12 order. Seavie's motion was granted, Ledo's counterclaim was stricken, and summary judgment in Seavie's favor was entered. Ledo appeals this summary judgment. Essentially, Ledo argues that summary judgment was improper because the trial court's December 12 order striking Ledo's pleadings and determining Ledo's liability lacked the express written findings of fact required by Kozel v. Ostendorf, 629 So. 2d 817 (Fla. 1993), and Ham v. Dunmire, 891 So. 2d 492 (Fla. 2004).

## II. Analysis

---

[1] More particularly, Ledo's counterclaim alleged that the original verified complaint was a fraud because: (1) the promissory note attached to Seavie's complaint was "a false and fraudulent document" because it bore no signature, whereas the original (and identical) later filed promissory note actually bore Ledo's signature; (2) Seavie's complaint falsely represented that Ledo had failed to make payments required by the note because Ledo had made payments as purportedly evidenced by three checks attached to the complaint; and (3) Seavie's complaint falsely represented that $165,000 was due when Seavie had **proposed** a $30,000 principal modification. Ledo claimed that he was not only entitled to a judgment in his favor on these claims, but also that he was entitled to damages for slander of title and fraud and unjust enrichment as a consequence. Ledo also claimed that Seavie had charged usurious interest on a separate $8000 loan that it had made to him.

We review the trial court's order striking the pleadings for abuse of discretion. Ham, 891 So. 2d at 495 ("[D]etermining sanctions for discovery violations is committed to the discretion of the trial court, and will not be disturbed upon appeal absent an abuse of the sound exercise of that discretion.") (citing Mercer v. Raine, 443 So. 2d 944, 946 (Fla. 1983)). The striking of pleadings for noncompliance with an order compelling discovery "is the most severe of all sanctions which should be employed only in extreme circumstances." Mercer, 443 So. 2d at 946.

Since Ledo was sanctioned for his own failures to comply with court orders while he was acting *pro se*, Kozel has no application here. See Ham, 891 So. 2d at 496 (confirming that Kozel addresses "whether a dismissal with prejudice is a warranted response to an attorney's behavior"). Rather, this matter falls within the Mercer/Ham rubric, which mandates a determination and findings of willful or deliberate disregard of a court's authority:

> It is well settled that determining sanctions for discovery violations is committed to the discretion of the trial court, and will not be disturbed upon appeal absent an abuse of the sound exercise of that discretion. See Mercer v. Raine, 443 So. 2d 944, 946 (Fla. 1983). Reviewing courts apply a "reasonableness test" to determine if the trial court has abused its discretion, which provides that if reasonable people could differ as to the propriety of the trial court's action, the action is not unreasonable, and no abuse of discretion has occurred. See id. (citing Canakaris v. Canakaris, 382 So. 2d 1197 (Fla. 1980)). While sanctions are within a trial court's discretion, it is also well established that dismissing an action for failure to comply with orders compelling discovery is "the most severe of all sanctions which

7

should be employed only in extreme circumstances." <u>Mercer</u>, 443 So. 2d at 946. In <u>Mercer</u>, this Court held that "[a] deliberate and contumacious disregard of the court's authority will justify application of this severest of sanctions, as will bad faith, willful disregard or gross indifference to an order of the court, or conduct which evinces deliberate callousness." <u>Id.</u> (citation omitted).

The dismissal of an action based on the violation of a discovery order will constitute an abuse of discretion where the trial court fails to make express written findings of fact supporting the conclusion that the failure to obey the court order demonstrated willful or deliberate disregard. <u>See</u> <u>Commonwealth Fed. Savings & Loan Ass'n v. Tubero</u>, 569 So. 2d 1271 (Fla. 1990). Express findings are required to ensure that the trial judge has consciously determined that the failure was more than a mistake, neglect, or inadvertence, and to assist the reviewing court to the extent the record is susceptible to more than one interpretation. <u>See</u> <u>id.</u> at 1273. While no "magic words" are required, the trial court must make a "finding that the conduct upon which the order is based was equivalent to willfulness or deliberate disregard." <u>Id.</u>

<u>Ham</u>, 891 So. 2d at 495-96.

The record plainly reflects that the trial court *repeatedly* informed Ledo: (1) of the need to respond to the interrogatory requests; and (2) that sanctions, including the striking of his pleadings, would follow if he failed to do so in a timely manner.  Further, the record clearly reflects that Ledo's failure to respond to the interrogatories was the result of Ledo's willful and deliberate disregard of the court's orders, rather than any mistake or inadvertence.

Under the circumstances of this case—where the record demonstrably establishes Ledo's deliberate disregard of the trial court's order—we do not find

8

any reversible error in the trial court's failure to provide written findings of fact in its December 12 order striking Ledo's pleadings.

In Ham, the Florida Supreme Court explained:

Express findings are required to ensure that the trial judge has consciously determined that the failure was more than a mistake, neglect or inadvertence, and to assist the reviewing court **to the extent the record is susceptible to more than one interpretation**.

Ham, 891 So. 2d at 496 (emphasis added). In this case, the record is not susceptible to more than one interpretation—Ledo's conduct clearly constituted willful or deliberate disregard for the court's November 7 order—and, it is clear that the trial judge made the conscious determination that Ledo's failure to respond to Seavie's interrogatories was more than a mistake, neglect or inadvertence.[2]

---

[2] The instant case is distinguishable from Toll v. Korge, 127 So. 3d 883, 887 (Fla. 3d DCA 2013), where this court found reversible error where:

The trial court failed to hold an evidentiary hearing and failed to make the necessary findings under Kozel, rendering it impossible to determine whether the Defendants' collective dilatory conduct was personally attributable to Toll, to another defendant, or to Toll's counsel.

In Toll, this court remanded for an evidentiary hearing and further instructed:

If, on remand, the trial court determines that dismissal is appropriate, the trial court shall include in its written order findings of fact with respect to each [Kozel] factor, and individualized findings with regard to the conduct of each of the sanctioned parties and their counsel.

Id. at 888. In the instant case, it is clear that Ledo's conduct was personally attributable to himself, rather than his attorney or any other party.

Affirmed.